UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HI BAR CAPITAL LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>YOEL GETTER,<br><br>　　　　Defendant/Third-Party Plaintiff,<br><br>　　v.<br><br>YISROEL HERBST,<br><br>　　　　Third-Party Defendant. | No. 1:22-CV-1743 (KAM) (CLP)<br><br>**JURY TRIAL DEMANDED** |

**ANSWER, COUNTERCLAIMS, AND THIRD-PARTY
COMPLAINT OF YOEL GETTER**

Defendant Yoel Getter ("Getter"), by and through his undersigned attorneys, hereby answers Plaintiff's complaint in the above-captioned case (the "Complaint") as follows[1]:

1. Getter denies the allegations set forth in paragraph 1 of the Complaint, except admits that (i) in or around early 2021 Getter discussed starting a cash advance business with Yisroel Herbst ("Herbst"), (ii) the cash advance business would provide companies with working capital, and (iii) it is important to conduct due diligence and underwriting for such companies.

2. Getter denies the allegations set forth in paragraph 2 of the Complaint, except admits that (i) he told Herbst in substance that he had experience in the cash advance business and relationships with brokers and business operators, (ii) he and Herbst agreed that Getter would

---

[1] Nothing in this Answer constitutes or is intended to constitute any agreement or admission as to the relevance or admissibility of any of the matters set forth in the Complaint. Getter expressly reserves any and all objections to the relevance and admissibility of matters set forth in the Complaint.

1

operate Plaintiff, and (iii) he was entitled to receive 50% of Plaintiff's net profits as such profits were received by Plaintiff.

3. Getter denies the allegations set forth in paragraph 3 of the Complaint, except admits that he was successful in bringing in a high volume of transactions with business operators that generated significant revenue for Plaintiff.

4. Getter denies the allegations set forth in paragraph 4 of the Complaint.

5. Paragraph 5 contains legal conclusions to which no response is required. To the extent any response is required, Getter denies the allegations set forth in paragraph 5.

6. Getter denies the allegations set forth in paragraph 6 of the Complaint, except admits that Plaintiff is a limited liability company that maintained a place of business in Kings County, New York.

7. Getter denies the allegations set forth in paragraph 7 of the Complaint, except admits he is a citizen of Florida.

8. Getter admits that the Court has subject matter jurisdiction over this action.

9. Getter admits that venue is proper in this district.

10. Getter denies the allegations set forth in paragraph 10 of the Complaint, except admits that Plaintiff was formed on or about February 9, 2021 with the intent to operate as a cash advance business.

11. Getter denies the allegations set forth in paragraph 11 of the Complaint, except admits that Plaintiff provided working capital to business operators and that Plaintiff's business had risk based in part on its customers' ability to generate and collect current and future receivables.

12. Getter lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint, except admits that Herbst had experience in the cash advance industry.

13. Getter denies the allegations set forth in paragraph 13 of the Complaint, except admits that he told Herbst in substance that he had experience in the cash advance industry and relationships with brokers and business operators.

14. Getter denies the allegations set forth in paragraph 14 of the Complaint, except admits that he (i) identified potential customers for Plaintiff, (ii) conducted due diligence and underwriting for potential customers of Plaintiff, (iii) negotiated transaction terms with potential customers of Plaintiff, and (iv) collected funds from Plaintiff's customers.

15. Getter denies the allegations set forth in paragraph 15 of the Complaint, except admits that he was entitled to receive 50% of Plaintiff's net profits as such profits were received by Plaintiff.

16. Getter denies the allegations set forth in paragraph 16 of the Complaint, except admits that (i) he identified certain potential customers for Plaintiff, (ii) certain transactions generated profits for Plaintiff, and (iii) Plaintiff paid Getter his 50% share of net profits arising out of certain transactions.

17. Getter denies the allegations set forth in paragraph 17 of the Complaint.

18. Getter denies the allegations in paragraph 18 of the Complaint, except admits that (i) in or about June 2021, Getter and a non-party jointly purchased a residence in Miami Beach, Florida, (ii) in or about October 2021, Getter, with Herbst's knowledge, agreed to purchase the non-party's interest in the property for $2,255,023, to be paid in 21 installments of $100,000 each beginning on or about October 12, 2021, with the remaining balance due on March 15, 2022, and

(iii) Getter executed an affidavit of confession of judgment in favor of the non-party in the amount of $2,255,023.

19. Getter denies the allegations set forth in paragraph 19 of the Complaint.

20. Getter denies the allegations set forth in paragraph 20 of the Complaint.

21. Getter denies the allegations set forth in paragraph 21 of the Complaint.

22. Getter denies the allegations set forth in paragraph 22 of the Complaint.

23. Getter denies the allegations set forth in paragraph 23 of the Complaint.

24. Getter denies the allegations set forth in paragraph 24 of the Complaint, except admits that he registered two entities he controls, Quick Capital Inc. and City Capital NY LLC, to conduct business under the name of Hi Bar Capital.

25. Getter denies the allegations set forth in paragraph 25 of the Complaint.

26. Getter denies the allegations set forth in paragraph 26 of the Complaint, except admits that Plaintiff advanced funds to Fruit Street Health, Inc. in several transactions, including one involving approximately $1.4 million in advanced funds.

27. Getter denies the allegations set forth in paragraph 27 of the Complaint.

28. Getter denies the allegations set forth in paragraph 28 of the Complaint.

29. Paragraph 29 presents a hypothetical scenario to which no response is required.

30. Getter denies the allegations set forth in paragraph 30 of the Complaint.

31. Getter denies the allegations set forth in paragraph 31 of the Complaint.

32. Getter denies the allegations set forth in paragraph 32 of the Complaint.

33. Getter denies the allegations set forth in paragraph 33 of the Complaint, except admits that in or about October 2021, Getter requested that Plaintiff advance him 21 installments of $100,000 each and Plaintiff, with Herbst's knowledge and voluntary consent, agreed to do so.

34. Getter denies the allegations set forth in paragraph 34 of the Complaint, except admits that, with Herbst's knowledge and voluntary consent, Plaintiff agreed to pay Getter the above-described advances.

35. Paragraph 35 contains legal conclusions to which no response is required. To the extent paragraph 35 contains information regarding Plaintiff's conduct, Getter lacks knowledge or information regarding such conduct.

## COUNT I

36. Getter repeats and realleges the foregoing responses as if fully set forth herein.

37. Paragraph 37 contains legal conclusions to which no response is required. To the extent any response is required, Getter denies the allegations set forth in paragraph 37.

38. Paragraph 38 contains legal conclusions to which no response is required. To the extent any response is required, Getter denies the allegations set forth in paragraph 38

39. Paragraph 39 contains legal conclusions to which no response is required. To the extent any response is required, Getter denies the allegations set forth in paragraph 39.

40. Paragraph 40 contains legal conclusions to which no response is required. To the extent any response is required, Getter denies the allegations set forth in paragraph 40.

## COUNT II

41. Getter repeats and realleges the foregoing responses as if fully set forth herein.

42. Getter denies the allegations set forth in paragraph 42, except admits that he and Herbst agreed that Getter would identify potential customers for Plaintiff and operate Plaintiff and that Getter was entitled to receive 50% of Plaintiff's net profits as such profits were received by Plaintiff.

43. Paragraph 43 contains legal conclusions to which no response is required. To the extent any response is required, Getter denies the allegations set forth in paragraph 43.

44. Paragraph 44 contains legal conclusions to which no response is required. To the extent any response is required, Getter denies the allegations set forth in paragraph 44.

45. Paragraph 45 contains legal conclusions to which no response is required. To the extent any response is required, Getter denies the allegations set forth in paragraph 45.

## COUNT III

46. Getter repeats and realleges the foregoing responses as if fully set forth herein.

47. Paragraph 47 contains legal conclusions to which no response is required.

48. Paragraph 48 contains legal conclusions to which no response is required. To the extent any response is required, Getter denies the allegations set forth in paragraph 48.

49. Paragraph 49 contains legal conclusions to which no response is required. To the extent any response is required, Getter denies the allegations set forth in paragraph 49.

50. Paragraph 50 contains legal conclusions to which no response is required. To the extent any response is required, Getter denies the allegations set forth in paragraph 50.

## COUNT IV

51. Getter repeats and realleges the foregoing responses as if fully set forth herein.

52. Getter denies the allegations set forth in paragraph 52.

53. Paragraph 53 contains legal conclusions to which no response is required. To the extent any response is required, Getter denies the allegations set forth in paragraph 53.

54. Paragraph 54 contains legal conclusions to which no response is required. To the extent any response is required, Getter denies the allegations set forth in paragraph 54.

## COUNT V

55. Getter repeats and realleges the foregoing responses as if fully set forth herein.

56. Paragraph 56 contains legal conclusions to which no response is required. To the extent any response is required, Getter denies the allegations set forth in paragraph 56.

57. Paragraph 57 contains legal conclusions to which no response is required. To the extent any response is required, Getter denies the allegations set forth in paragraph 57.

58. Paragraph 58 contains legal conclusions to which no response is required. To the extent any response is required, Getter denies the allegations set forth in paragraph 58.

## AFFIRMATIVE DEFENSES

### As and for a First Affirmative Defense

59. The Complaint fails to state a cause of action upon which relief may be granted.

### As and for a Second Affirmative Defense

60. Plaintiff's claims are barred, in whole or in part, because to the extent Plaintiff has suffered any damages, such damages were not proximately caused by acts and/or omissions of Getter but rather were caused by actions or omissions of other persons or entities, including but not limited to Plaintiff and Herbst.

### As and for a Third Affirmative Defense

61. Plaintiff's claims are barred, in whole or in part, by Plaintiff's own contractual breaches.

### As and for a Fourth Affirmative Defense

62. Because a valid and enforceable contract exists between Plaintiff and Getter, Plaintiff's common law claims are barred, in whole or in part, as duplicative of its contract claim.

### As and for a Fifth Affirmative Defense

63. Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to mitigate its alleged damages or injuries.

### Additional Affirmative Defenses

64. In addition to the foregoing defenses, Getter reserves the right to amend his Answer to assert any additional affirmative defenses, including but not limited to any that become apparent based on facts adduced in discovery or otherwise.

### COUNTERCLAIMS AGAINST PLAINTIFF AND THIRD-PARTY COMPLAINT AGAINST YISROEL HERBST

### FACTS

1. In or about 2019, Getter was a principal at BBF Partners LLC ("BBF"), a merchant cash advance business. BBF's two principal investors were Getter and a non-party (the "non-party"). Getter and the non-party each provided 50% of BBF's capital, and each was entitled to receive 50% of BBF's net profits.

2. At BBF, Getter, among other things, directly or indirectly, identified potential customers, conducted due diligence and underwriting for potential customers, and negotiated transaction terms with potential customers.

3. While working at BBF, Getter was introduced to Herbst. Thereafter, Herbst agreed to invest approximately $1 million in BBF every three months. In return, Herbst was entitled to receive 10% of Getter's share of BBF's net profits.

4. Thereafter, Getter and Herbst agreed to establish and operate a new merchant cash advance business. By this time, both Getter and Herbst had experience in the merchant cash advance business.

5. On or about February 9, 2021, Getter formed Plaintiff, the new merchant cash advance business to be operated by Getter and Herbst.

6. At or about that time, Getter and Herbst agreed that Herbst would invest $10 million in Plaintiff and Getter would be responsible for, directly or indirectly, identifying potential customers, conducting due diligence and underwriting for potential customers, negotiating transaction terms with potential customers, and collecting amounts owed to Plaintiff by its customers.

7. At or about that time, Getter and Herbst agreed that each of them would be entitled to receive 50% of Plaintiff's net profits.

8. For months, Plaintiff operated successfully. Plaintiff entered into hundreds of transactions and earned millions of dollars in profits.

9. During this time, Herbst did not interact with cash advance brokers, identify potential customers, conduct due diligence and underwriting for potential customers, negotiate transaction terms with potential customers, or collect amounts owed to Plaintiff by its customers.

10. Nevertheless, Herbst was aware, and should have been aware, of all of Plaintiff's transactions and customers based on, among other things, his involvement with the business's accounting functions and his exclusive control over Plaintiff's bank accounts. At no time did Getter have access to Plaintiff's bank accounts, or the ability to withdraw money from Plaintiff's bank accounts.

11. In or about May 2021, Herbst, in violation of the above-described agreement, informed Getter that he (Herbst) could only invest $5 million in Plaintiff and that he needed to borrow the remainder in order to meet his commitment to provide $10 million in funding.

12. Thereafter, Plaintiff secured a commitment from BFunding LLC to loan money to Plaintiff. BFunding LLC loaned a total of $7 million in two separate transactions. The first loan was provided in or about June 2021, at an annual interest rate of 24%. The second loan was provided in or about August 2021, at an annual interest rate of 18%.

13. In or about November 2021, Herbst informed Getter that he (Herbst) wanted to withdraw his original investment in Plaintiff.

14. At this time, Plaintiff's two loans from BFunding LLC were still outstanding.

15. Plaintiff's business depended in part on the availability of sufficient funds to provide cash advances to its customers.

16. Getter objected to Herbst's withdrawal of his original investment.

17. Nevertheless, and contrary to the best interests of Plaintiff, Herbst, on a daily basis, thereafter withdrew $50,000 from Plaintiff's bank accounts in order to reimburse himself for his original investment.

18. Due to Herbst's actions, Plaintiff's business was unable to maintain its previous level of activity and profitability, and the business eventually stopped.

19. At or about this time, Herbst's son, who was an employee of Plaintiff, contacted customers, without Getter's prior knowledge, to seek collection of amounts owed to Plaintiff by its customers and offered discounts to customers. Upon information and belief, Herbst's son did so with Herbst's prior knowledge and approval. When Getter complained to Herbst about his son's conduct, Herbst, upon information and belief, did nothing to rectify or stop it.

20. Upon information or belief, at or about this time, Herbst and/or his son also contacted customers and falsely informed them that Getter was no longer part of Plaintiff. As a result, certain customers failed to timely pay Plaintiff what the customers owed Plaintiff.

21. Thereafter, Herbst, without valid justification, terminated Getter's access to Plaintiff's books and records.

22. At or about the time this action was commenced by Plaintiff, Plaintiff was owed approximately $26 million by its customers, which amount constituted profit to Plaintiff.

23. Because of Herbst's above-described actions, Getter is unaware of the status of collections by Plaintiff.

24. Getter has not received any distribution of his share of Plaintiff's net profits since January 2022.

25. Getter has been damaged in an amount to be determined at trial, but currently believed to be as much as (if not more than) $13 million—constituting Getter's 50% share of Plaintiff's net profits on the amounts owed by Plaintiff's customers, which Getter has not received—as well as his rightful share of lost profits from future business that Plaintiff could have earned but for Herbst's above-described actions.

26. Upon information and belief, funds constituting all or part of Getter's unpaid share of Plaintiff's profits are currently in the possession of Plaintiff and/or Herbst.

## FIRST COUNTERCLAIM – BREACH OF CONTRACT

27. Getter repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

28. Pursuant to the terms of the agreement entered into by and between Plaintiff and Getter, Plaintiff was obligated to pay Getter 50% of Plaintiff's net profits.

29. Getter performed his obligations under this agreement.

30. At or about the time this action was commenced, Plaintiff was owed approximately $26 million by its customers.

31. Plaintiff has failed to pay Getter his share of Plaintiff's net profits, in an amount to be determined at trial but currently believed to be as much as, if not more than, $13 million.

32. Plaintiff breached its agreement with Getter.

33. By reason of the foregoing, Getter has been damaged in an amount to be determined at trial but currently believed to be as much as, if not more than, $13 million, plus pre-judgment interest.

## SECOND COUNTERCLAIM - ACCOUNTING

34. Getter repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

35. Getter is entitled to be paid 50% of Plaintiff's net profits.

36. Herbst terminated Getter's access to Plaintiff's books and records.

37. Getter is unable to determine the amounts Plaintiff has collected from its customers and, as a result, is unable to determine the amount Plaintiff owes him.

38. There is no adequate remedy at law.

39. Getter requested access to Plaintiff's books and records, and that request was denied.

40. Getter is entitled to a complete forensic accounting of all of Plaintiff's transactions, with unfettered access, to him and his agents and designees, to all of Plaintiff's books and records for the purpose of conducting such an accounting.

## THIRD-PARTY COMPLAINT AGAINST YISROEL HERBST

41. Third-Party Plaintiff Getter repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

42. Getter asserts claims against Third-Party Defendant Herbst pursuant to Federal Rules of Civil Procedure 13(h), 18(a), and 20(a)(2).

## PARTIES

43. Getter is a citizen of Florida.

44. Herbst, upon information and belief, is a citizen of New York, residing in Kings County.

## JURISDICTION AND VENUE

45. The Court has jurisdiction over Getter's claims against Herbst pursuant to 28 U.S.C. § 1332 because Getter (Third-Party Plaintiff) is a citizen of Florida, Herbst (Third-Party Defendant) is a citizen of New York, and the amount in controversy exceeds $75,000.

46. Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).

## FIRST CLAIM - BREACH OF CONTRACT

47. Getter repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

48. In or about February 2021, Getter and Herbst entered into an agreement relating to the operation of Plaintiff.

49. Getter performed his obligations under the agreement.

50. Pursuant to the agreement, Herbst agreed to provide $10 million in funding to Plaintiff.

51. Thereafter, Herbst provided only approximately $5.3 million in funding to Plaintiff, and instead caused Plaintiff to borrow $7 million at high interest rates in an effort to satisfy his funding obligation.

52. Herbst not only failed to honor his obligation to provide $10 million in funding, but also subsequently withdrew, over Getter's objection, portions of his initial funding.

53. Herbst breached the agreement with Getter.

54. As a result of Herbst's breaches of the agreement, Plaintiff was unable to maintain its previous level of activity and profitability, and the business eventually stopped.

55. As a result of Herbst's breaches of the agreement, Getter has been deprived of his rightful share of lost profits from future business that Plaintiff could have earned but for Herbst's actions.

56. By reason of the foregoing, Getter has been damaged in an amount to be determined at trial.

**SECOND CLAIM -
BREACH OF FIDUCIARY DUTY**

57. Getter repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

58. Herbst owed fiduciary duties of loyalty and good faith to Getter, in connection with the operation of Plaintiff.

59. Herbst breached his fiduciary duties to Getter by (among other things) failing to provide funding to Plaintiff in the amount he agreed to provide; causing Plaintiff to instead obtain funding at high interest rates; interfering with Getter's collection of amounts owed by Plaintiff's customers; contacting customers of Plaintiff or causing them to be contacted, and telling them that Getter was no longer part of Plaintiff; terminating Getter's access to Plaintiff's books and records; and failing to cause Plaintiff to pay Getter his rightful share of Plaintiff's net profits.

60. By reason of the foregoing, Getter has been damaged in amount to be determined at trial.

## THIRD CLAIM - ACCOUNTING

61. Getter repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

62. Herbst owed fiduciary duties of loyalty and good faith to Getter in connection with the operation of Plaintiff.

63. Getter is entitled to be paid 50% of Plaintiff's net profits.

64. Herbst terminated Getter's access to Plaintiff's books and records.

65. Getter is unable to determine the amount Plaintiff has collected from its customers and, as a result, is unable to determine the amounts Plaintiff owes him.

66. There is no adequate remedy at law.

67. Getter requested access to Plaintiff's books and records, and that request was denied.

68. Getter is entitled to a complete forensic accounting of all of Plaintiff's transactions, with unfettered access, to him and his agents and designees, to all of Plaintiff's books and records for the purpose of conducting such an accounting.

## FOURTH CLAIM – CONVERSION

69. Getter repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

70. Getter owns and has a property right in 50% of Plaintiff's net profits, a right that is superior to Herbst's purported right of possession in such property.

71. Upon information and belief, Herbst is in actual or constructive possession of Getter's share of Plaintiff's net profits.

72. By failing to pay, or to cause Plaintiff to pay, Getter his rightful share of Plaintiff's net profits, Herbst has wrongfully converted such funds.

73. By reason of the foregoing, Getter has been damaged in amount to be determined at trial.

## FIFTH CLAIM - <br> UNJUST ENRICHMENT

74. Getter repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

75. This claim is asserted as an alternative to Getter's breach of contract claim against Herbst.

76. Getter is entitled to be paid 50% of Plaintiff's net profits.

77. Upon information and belief, Herbst is in actual or constructive possession of Getter's share of Plaintiff's net profits.

78. Equity and good conscience militate against permitting Herbst to retain Getter's share of Plaintiff's net profits.

79. Herbst has been unjustly enriched in an amount to be determined at trial.

## SIXTH CLAIM – <br> MONEY HAD AND RECEIVED

80. Getter repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

81. This claim is asserted as an alternative to Getter's breach of contract claim against Herbst.

82. Upon information and belief, Herbst is in actual or constructive possession of Getter's share of Plaintiff's net profits.

83. Upon information and belief, Herbst has benefitted from possessing Getter's share of Plaintiff's net profits.

84. Equity and good conscience militate against permitting Herbst to retain Getter's share of Plaintiff's net profits.

85. By reason of the foregoing, Getter has been damaged in amount to be determined at trial.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendant/Third-Party Plaintiff hereby asserts his right under the Seventh Amendment to the United States Constitution and demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Getter respectfully requests that the Court grant the following relief:

i. Dismissing the Complaint and all claims asserted therein with prejudice;

ii. On the first counterclaim against Plaintiff, judgment in Getter's favor and against Hi Bar Capital LLC in an amount to be determined at trial but currently believed to be as much as, if not more than, $13 million, plus pre-judgment interest;

iii. On the second counterclaim against Plaintiff, judgment in Getter's favor and against Hi Bar Capital LLC, permitting a full forensic accounting of all of Hi Bar Capital LLC's transactions;

iv. On the first claim against Herbst, judgment in Getter's favor and against Herbst in an amount to be determined at trial that constitutes Getter's share of Plaintiff's current and future net profits that were lost as a result of Herbst's breaches, plus pre-judgment interest;

v. On the second claim against Herbst, judgment in Getter's favor and against Herbst in an amount to be determined at trial that constitutes Getter's share of Plaintiff's current and future net profits that were lost as a result of Herbst's breaches, plus disgorgement of Herbst's compensation and share of net profits from Hi Bar Capital LLC, plus pre-judgment interest;

vi. On the third claim against Herbst, judgment in Getter's favor and against Herbst, permitting a full forensic accounting of all of Hi Bar Capital LLC's transactions;

vii. On the fourth claim against Herbst, judgment in Getter's favor and against Herbst in an amount to be determined at trial that constitutes Getter's share of Plaintiff's net profits that Herbst unlawfully converted, plus pre-judgment interest;

viii. In the alternative to the first and second claims against Herbst, on the fifth and sixth claims against Herbst, judgment in Getter's favor and against Herbst in an amount to be determined at trial that constitutes Getter's share of Plaintiff's net profits that are in Herbst's possession, plus pre-judgment interest; and

ix. On all counterclaims against Hi Bar Capital LLC and all claims against Herbst, awarding Getter attorneys' fees, costs and disbursements, and such other and further relief as the Court may deem just and proper.

Dated: July 22, 2022
New York, New York

Respectfully submitted,

 /s/ Alan Vinegrad
Alan Vinegrad
Benjamin Klein
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
(212) 841-1010 (fax)
avinegrad@cov.com
bklein@cov.com

*Attorneys for Defendant/Third-Party Plaintiff Yoel Getter*