UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
HI BAR CAPITAL LLC,                                  :
                                                     :
                           Plaintiff,                :
                                                     :      MEMORANDUM & ORDER
            -against-                                :
                                                     :      22-CV-1743 (ENV) (RML)
YOEL GETTER,                                         :
                                                     :
                           Defendant/Third-          :
                           Party Plaintiff,          :
                                                     :
            -against-                                :
                                                     :
                                                     :
YISROEL HERBST                                       :
                                                     :
                           Third-Party               :
                           Defendant.                :
------------------------------------------------------------------x

VITALIANO, D.J.

On March 29, 2022, plaintiff Hi Bar Capital LLC ("Hi Bar") filed this diversity action against defendant Yoel Getter, bringing claims for breach of fiduciary duty, breach of contract, conversion, money had and received, and unjust enrichment. Compl., Dkt. 1. Plaintiff filed an amended complaint on October 4, 2022. Am. Compl., Dkt. 22. On October 13, 2022, defendant Getter filed an amended answer to the complaint, asserting counterclaims against Hi Bar and bringing third-party claims individually and derivatively on behalf of Hi Bar against Yisroel Herbst, Hi Bar's principal. Am. Answer & Counterclaims/Am. Third-Party Compl. ("Counterclaims"), Dkt. 23. Before the Court is Magistrate Judge Levy's Report and Recommendation ("R&R") recommending that plaintiff and third-party defendant's motion to dismiss the counterclaims and third-party complaint under Rules 12(b)(1) and 12(b)(6) be granted

1

in part and denied in part. R&R, Dkt. 44, at 29.[1] Defendant filed timely written objections to Magistrate Judge Levy's R&R on March 6, 2024. Def. Obj., Dkt. 46. Plaintiff filed an opposition to defendant's objections on March 29, 2024. Pl. Opp., Dkt. 48. After careful consideration, and for the following reasons, defendant's objections are sustained in part and overruled in part, and the R&R issued by Magistrate Judge Levy is adopted as modified by this Memorandum & Order.

Background

The Court presumes the parties' familiarity with the underlying facts and procedural history of this case, which are only recounted here insofar as they are helpful to understand the R&R and the Court's modification of it.

Hi Bar alleges that in early 2021 Herbst sought to start a merchant cash advance business that would purchase the future receivables of cash-strapped companies by providing those companies with funds to use as working capital. Am. Compl. ¶ 1. Around this time, Getter allegedly held himself out to Herbst as having extensive experience as a broker in the cash advance industry and indicated that he could utilize his network to bring a consistent stream of deals to Hi Bar. *Id.* ¶ 2. In March 2021, Hi Bar alleges that it hired Getter as an independent contractor to source deals and operate the day-to-day of Hi Bar's business and compensated him by paying him a commission of 50% of net profits earned by Hi Bar. *Id.* Hi Bar further alleges that Getter was initially successful in bringing in a high volume of deals but avers, somewhat hyperbolically, that his "greed and insatiable need for cash to fund his grandiose, outsized and unsustainable luxury lifestyle eventually caused [him] to bilk plaintiff out of millions of dollars." *Id.* ¶ 3.

Getter denies Hi Bar's allegations and asserts counterclaims against Hi Bar and third-party claims against third-party defendant Herbst. Getter's version of the story also opens in 2021, when

---

[1] All citations to pages refer to the Electronic Case Filing System ("ECF") pagination.

he alleges that he and Herbst agreed to establish and operate a merchant cash advance business in which they would each be 50% owners, or partners, of the business.  Counterclaims ¶ 4.  Getter further alleges that they had agreed to the following business arrangement: Herbst would invest $10 million in Hi Bar; Getter would be responsible for identifying and conducting due diligence on potential transactions; and Getter would be compensated by receiving 50% of Hi Bar's net profits.  *Id.* ¶¶ 8–9.

In or about May 2021, Getter alleges that Herbst, in violation of their agreement, informed Getter that he could only invest $5 million in Hi Bar and that he needed to borrow the remainder to meet his commitment to provide $10 million in funding.  Counterclaims ¶ 18.  Thereafter, according to Getter, Herbst informed him in November 2021 that he wanted to recoup his original investment in Hi Bar by making daily withdrawals of $50,000 from Hi Bar's bank accounts, which Getter objected to.  *Id.* ¶¶ 20–24.  Getter alleges that due to Herbst's actions, Hi Bar's business was unable to maintain its previous level of activity and profitability and the business eventually stopped.  *Id.* ¶ 25.

As third-party plaintiff, Getter claims that he has been damaged in an amount believed to be at least $13 million, constituting his 50% share of the $26 million owned to Hi Bar by its customers at the time this action commenced, along with his rightful share of lost profits from future business that he would have earned but for Herbst's actions.  Counterclaims ¶¶ 29, 32.  Getter makes third-party claims against Herbst for breach of contract, breach of fiduciary duty, accounting, conversion, unjust enrichment, and money had and received; derivative claims on behalf of Hi Bar against Herbst for breach of contract and breach of fiduciary duty; and counterclaims against Hi Bar for breach of contract and accounting.  *See generally id.*

Legal Standards

Where a defendant moves to dismiss under Rule 12(b)(1) and Rule 12(b)(6), the district court must first resolve the jurisdictional objections raised under (b)(1) before considering the substantive challenge under (b)(6). *Prime Contractors, Inc. v. APS Contractors Inc.*, 754 F. Supp. 3d 289, 297 (E.D.N.Y. 2024). The motion court may consider, during its review of the jurisdictional objections, all materials appropriate to its consideration of the (b)(6) motion to dismiss as well as any evidence extrinsic to the complaint which is relevant to the jurisdictional objections. *Id.* at 298. On the Rule 12(b)(1) dismissal motion, it is the claimant's burden to establish the district court's jurisdiction, not the movant's burden to disprove it. *Id.*

To overcome a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). A claim is plausible on its face "when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted). The district court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Viet. Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

Even though potentially dispositive, motions to dismiss may be referred to a magistrate judge for report and recommendation. Upon receiving the R&R from the magistrate judge, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations

4

made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). In the absence of any objection, the district court need only be satisfied that there is no clear error on the face of the record. *Dafeng Hengwei Textile Co. v. Aceco Indus. & Com. Corp.*, 54 F. Supp. 3d 279, 283 (E.D.N.Y. 2014). Clear error exists "where, upon a review of the entire record, [the district judge] is left with the definite and firm conviction that a mistake has been committed." *Saveria JFK, Inc. v. Flughafen Wien, AG*, No. 15-CV-6195, 2017 WL 1194656, at *2 (E.D.N.Y. Mar. 30, 2017).

However, a district judge must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Importantly, "objections must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *N.Y.C. Dist. Council of Carpenters v. Allied Design & Constr., LLC*, 335 F. Supp. 3d 349, 351 (E.D.N.Y. 2018). "If the [objecting] party makes only frivolous, conclusory or general objections, or simply reiterates [the party's] original arguments, the Court reviews the report and recommendation only for clear error." *Gov't Emps. Ins. Co. v. Galperin*, No. 23-CV-9241 (AMD) (AYS), 2025 WL 909190, at *1 (E.D.N.Y. Mar. 26, 2025) (quoting *Velez v. DNF Assocs., LLC*, No. 19-CV-11138, 2020 WL 6946513, at *2 (S.D.N.Y. Nov. 25, 2020)) (internal quotation marks omitted) (alterations in original). Conversely, but to the same effect, "the court will not consider arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance." *Id.* (quoting *Saada v. Golan*, No. 18-CV-5292, 2023 WL 1993538, at *2 (E.D.N.Y. Feb. 13, 2023)) (internal quotation marks omitted).

<u>Discussion</u>

Getter objected to the portions of the R&R in which Magistrate Judge Levy recommended that the following claims be dismissed as inadequately pled: (1) the breach of contract, accounting, conversion, and unjust enrichment claims asserted by Getter in his individual capacity against

5

Herbst; and (2) the breach of contract and accounting counterclaims asserted by Getter against Hi Bar. Getter did not object to the portions of the R&R that recommended dismissal of his money had and received claim against Herbst and his derivative claims against Herbst. Neither party objected to Magistrate Judge Levy's recommendation that the motion to dismiss Getter's breach of fiduciary duty claim against Herbst be denied.

    I.    <u>Getter's Direct Claims Against Herbst</u>

Getter, first of all, makes a third-party claim against Herbst for breach of contract. "To state a claim for breach of contract under New York law, 'the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the [claimant]; (iii) failure of defendant to perform; and (iv) damages.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)). Here, Getter seeks damages in the form of "lost profits from future business that [he] could have earned but for Herbst's actions." Counterclaims ¶ 67. It is well settled that a claimant can only recover lost profits "if he can establish both the existence and amount of such damages with reasonable certainty . . . 'based upon known reliable factors without undue speculation.'" *Schonfeld v. Hillard*, 218 F.3d 164, 172 (2d Cir. 2000) (quoting *Ashland Mgmt. Inc. v. Janien,* 624 N.E.2d 1007, 1010, 82 N.Y.2d 395, 403 (1993)). While courts tend to address the issue of lost profits at the summary judgment stage, it is not a process set in concrete. *See ACCD Glob. Agric. Inc. v. Perry*, No. 12 Civ. 6286(KBF), 2013 WL 840706, at *6 (S.D.N.Y. Mar. 1, 2018). Indeed, New York courts have dismissed claims for lost profits where the pleadings suggest that such an award "would require an unreasonable level of speculation." *Id.* (quoting *Robin Bay Assocs., LLC v. Merrill Lynch & Co.,* No. 07 Civ. 376, 2008 WL 2275902, at *7 (S.D.N.Y. June 3, 2008)) (internal quotation marks omitted). Further, as case law makes clear, "a stricter standard is

imposed [on a new business] for the obvious reason that there does not exist a reasonable basis of experience upon which to estimate lost profits with the requisite degree of reasonable certainty." *Kenford Co. v. Cnty. of Erie*, 67 N.Y.2d 257, 261 (1986).

The R&R determined that Getter sufficiently pled three of the required elements of his breach of contract claim against Herbst, including (1) the formation of a contract, (2) performance by Getter, and (3) Herbst's breach in the form of failing to provide the $10 million in funding, which allegedly caused Hi Bar to be unable to maintain its previous level of activity and profitability. R&R at 13–14. The R&R nevertheless recommended the dismissal of the breach of contract claim after holding that Getter failed to adequately allege a non-speculative basis to recover lost profits for a new business venture like Hi Bar. *See id.* at 17. Getter objects to the R&R on the basis that its determination that any future lost profits calculation would be speculative overlooked Hi Bar's "track record of profits," which can be used "to calculate with reasonable certainty the future lost profits he is due." Def. Obj. at 10.

Getter's objections to this portion of the R&R are without merit. Getter refers to Hi Bar's "track record of earning substantial profits" as the basis to project future lost profits, Def. Obj. at 10–11, but he conspicuously does not allege that Hi Bar earned any profits within the accepted understanding of the term. Indeed, as explained by Magistrate Judge Levy, "Getter does not even allege that Hi Bar's revenues exceed[ed] its debts, expenses and other liabilities." R&R at 16 (quoting Mot. to Dismiss, Dkt. 29, at 22) (internal quotation marks omitted). Instead, Getter conflates *potential revenue* with *profits* when he alleges that Hi Bar "was owed approximately $26 million by its customers, which amount constituted profit" to Hi Bar. Counterclaims ¶ 29; *see also* Def. Obj. at 14 (arguing that the $26 million owed to Hi Bar by customers "constituted profit," meaning that "the business's revenues exceeded . . . its expenses and liabilities."). Not only does

7

the speculative nature of the cash advance business suggest that only a portion of the $26 million in receivables would be collected from Hi Bar's cash-strapped customers, but any profit would also need to account for the amount Hi Bar paid for such receivables—*i.e.*, the expenses. Getter fails to grapple with either of these ways that the amount of receivables owed to Hi Bar may not flow into profit. Thus, contrary to Getter's protestations, there is no "track record of profits" for the Court to "credit," making any projections of future profits too speculative to predict with certainty.[2] Getter's breach of contract claim against Herbst should therefore be dismissed. *See Robin Bay Assocs.*, No. 07 Civ. 376(JMB), 2008 WL 2275902, at *7-8 (dismissing contract claim seeking future lost profits where the court would have been required to make a number of speculative assumptions concerning whether the project would ever be profitable because it had no track record of profits).[3]

Adding further to the speculative nature of Getter's lost profits claim is the multitude of assumptions that would need to be made to connect the breach—Herbst investing $5 million of equity in Hi Bar rather than the contemplated $10 million—to an amount of lost profits that could be predicted with certainty. Would Hi Bar have stayed in business longer had Herbst invested the

---

[2] Getter contests the relevance of the "new business rule," which "creates a higher 'level of proof needed to achieve reasonable certainty as to the amount of damages'" for new businesses, *Holland Loader Co. LLC v. FLSmidth A/S*, 769 F. App'x 40, 43 (2d Cir. 2019) (quoting *Int'l Telepassport Corp. v. USFI, Inc.*, 89 F.3d 82, 86 (2d Cir. 1996)), but tacitly concedes its applicability by positing that the rule only applies where "the allegations fail to establish *any* track record of profits upon which to base a future lost profits calculation." Def. Obj. at 10 (citing *Schonfeld*, 218 F.3d at 172). Here, Getter has not alleged any track record of profits; thus the "stricter standard is imposed" on his lost profits claim. *Kenford*, 67 N.Y.2d at 261.

[3] It is true that in certain cases past sales, rather than profits, can form the basis of an award of future profits, *see* Def. Obj. at 12–13, but in such cases the track record of sales must be "meaningful" and from an established business. *Washington v. Kellwood Co.*, No. 05-CV-10034 (SN), 2016 WL 3920348, at *7 (S.D.N.Y. July 15, 2016), *aff'd*, 714 F. App'x 35 (2d Cir. 2017). Here, the few months that Hi Bar operated and collected payments from customers does not supply sufficient past performance to extrapolate future profits.

8

full $10 million? If so, how much longer? Would Hi Bar have been able to purchase more receivables absent the breach? If so, how much more? These questions, which Getter does not even attempt to answer, invite conjecture and reflect the inherent speculation, uncertainty, and legal insufficiency of his damages claim. Correspondingly, Getter's objection to Magistrate Judge Levy's recommendation that his claim for breach of contract be dismissed is overruled.

Getter also advances a third-party claim for an accounting against Herbst. "In order to state a claim for accounting, a party must allege (1) the existence of a fiduciary duty; (2) money or property entrusted to defendants which imposed on them the burden of account; (3) the absence of an adequate legal remedy; and (4) a demand for an accounting and a refusal." *Caro Cap., LLC v. Koch*, No. 20-cv-6153 (LJL), 2021 WL 1595843, at *13 (S.D.N.Y. Apr. 23, 2021).

The R&R concludes that Getter's accounting claim against Herbst should be dismissed because he failed to allege a critical element of the claim, namely, that he had entrusted money or property to Herbst, which imposed on Herbst the burden of accounting. R&R at 21. Getter objects to this finding on the ground that he had alleged that Herbst had exclusive control over Hi Bar's bank accounts and that he therefore had entrusted his share of Hi Bar's profits to Herbst. Def. Obj. at 15. Herbst counters that "an accounting claim requires an actual transfer of money or property" and that merely because Getter did not have access to the bank account does not mean that he "entrusted" Herbst with the money. Pl. Opp. at 20 (emphasis omitted).

Propped up by the unchallenged finding in the R&R of a potential fiduciary relationship between Getter and Herbst, *see* R&R at 17–20, Getter has plausibly stated a claim for an accounting by sufficiently pleading that relinquishing the control over his contractual right to 50% of Hi Bar's net profits to Herbst amounted to an entrusting of property to Herbst, which imposed a burden to account. The cases cited in the R&R—offered in support of the argument that not

9

having access to a bank account does not constitute entrusting property within the meaning of an accounting claim—are inapposite considering the close relationship between Getter and Herbst.

Drilling further down, in *KJ Roberts & Co. v. MDC Partners Inc.*, the court held that a plaintiff's claim for an accounting failed as a matter of law only after highlighting that the plaintiff "ha[d] not produced any evidence suggesting" that "its relationship with defendant consisted of anything other than arm's length business dealings." No. 12 Civ. 5779(LGS), 2014 WL 1013828, at *12 (S.D.N.Y. Mar. 14, 2014), *aff'd*, 605 F. App'x 6 (2d Cir. 2015). Similarly, in *Reda v. Momentum Advanced Planning LLC*, the court dismissed an accounting claim only after emphasizing that "[o]utside of the alleged commercial agreement, [d]efendants have no special duty or obligation to act for the benefit of [p]laintiff." No. 19-CV-4129 (WFK)(PK), 2021 WL 9678661, at *9 (E.D.N.Y. Sept. 27, 2021). Here, by contrast, "Getter and Herbst were more than mere strangers dealing at arms-length." R&R at 20. Thus, given the close, potentially fiduciary relationship between the parties, Getter has sufficiently pled that he entrusted his share of Hi Bar's profits to Herbst via Herbst's exclusive control over Hi Bar's accounts, imposing on Herbst a burden to account. Getter's objection to the R&R's contrary conclusion is sustained. As a result, Getter's accounting claim survives the motion to dismiss it, and the R&R is modified accordingly.

Getter's laundry list of claims against Herbst includes one for conversion as well. To plead a claim for conversion under New York law, a claimant must allege: "(1) the property subject to conversion is a specific identifiable thing; (2) [claimant] had ownership, possession, or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or the exclusion of the [claimant's] rights." *Melwani v. Lipton*, No. 17 Civ. 8308 (PGG), 2019 WL 4572789, at *6 (S.D.N.Y. Sept. 20, 2019) (quoting *In re JMK Constr. Grp., Ltd.*, 502 B.R. 396, 413 (Bankr. S.D.N.Y. 2013))

10

(internal quotation marks omitted).  Getter alleges that he owns a property right in fifty percent of Hi Bar's net profits, that Herbst is in actual or constructive possession of Getter's share of Hi Bar's net profits, and that by failing to pay or cause Hi Bar to pay Getter his rightful share of Hi Bar's net profits, Herbst has wrongfully converted such funds.  *See* Counterclaims ¶¶ 86–88.

The R&R recommended dismissal of Getter's conversion claim against Herbst on the ground that Getter's allegations "fail to identify a tangible or specifically identifiable sum of money" that was supposedly converted, a critical element of conversion.  R&R at 21–23.  Getter argues that this recommendation should be rejected because "a [claimant] is required only to identify a specifically identifiable *fund* where the converted money is held," and "is not required to identify a specifically identifiable *sum* of money."  Def. Obj. at 17.  In short, Getter argues that he has satisfied his pleading burden by identifying the Hi Bar bank account over which Herbst had exclusive control and where Hi Bar's profits were stored prior to distribution.  *Id.* at 18 (citing Counterclaims ¶ 17).

Getter's objections to the R&R are overruled for several reasons.  First, meeting his principal objection to Magistrate Judge Levy's recommendation on his claim for conversion head on, and contrary to what he claims in opposition, Getter does not allege that the converted funds—Hi Bar's profits—are held in a specific Hi Bar bank account over which Herbst has dominion.  *See* Counterclaims ¶ 17.  At most, Getter alleges that Herbst exercised exclusive control over Hi Bar's *multiple* bank accounts; he does not allege which of these accounts actually held Hi Bar's profits.  *Id.*  Thus, Getter's conversion claim should be dismissed for failure to identify a "specific, identifiable fund."  *Star Auto Sales of Queens LLC v. Iskander*, No. 19-CV-06791 (RPK) (ST), 2022 WL 784520, at *6 (E.D.N.Y. Mar. 15, 2022).  Next, as previously discussed, Getter fails to allege that Hi Bar even had any profits to pay to Getter; absent an allegation that Hi Bar had profits

11

that Herbst could convert, Getter's claim necessarily fails.  Finally, Getter's conversion claim fails for the independent reason that "[a]n action of conversion does not lie to enforce a mere obligation to pay money."  *Ehrlich v. Howe*, 848 F. Supp. 482, 492 (S.D.N.Y. 1994).  Getter's theory—that Herbst "wrongfully converted" funds "[b]y failing to pay . . . Getter his rightful share of [p]laintiff's net profits," Counterclaims ¶ 88—amounts to "essentially an unpaid debt claim," which is insufficient to state a claim for conversion.  *Martiny v. Introcaso-Allison*, No. 17-CV-09559 (SN), 2019 WL 4593613, at *3 (S.D.N.Y. Sept. 23, 2019).  The objection, consequently, is overruled.

The next objection deals with Getter's claim seeking recovery on a theory of unjust enrichment.[4]  To survive a motion to dismiss an unjust enrichment claim, a claimant must show: "(1) that the defendant benefitted; (2) at the [claimant]'s expense; and (3) that equity and good conscience require restitution."  *Sulieman v. Igbara*, 599 F. Supp. 3d 113, 125 (E.D.N.Y. 2022) (quoting *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017)) (internal quotation marks omitted).  A typical case of unjust enrichment is that "in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled."  *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185, 18 N.Y.3d 777, 790 (2012).  Getter alleges that Herbst is in actual or constructive possession of Getter's share of Hi Bar's net profits and that equity and good conscience militate against permitting Herbst to retain such funds.  *See* Counterclaims ¶¶ 90–95.

Magistrate Judge Levy recommended dismissal of Getter's unjust enrichment claim against Herbst "[b]ecause Getter has not adequately alleged that Herbst received money belonging to

---

[4] Getter did not object to the R&R's recommendation that his money had and received claim be dismissed.  That recommendation is adopted because it is found to be correct, well-reasoned, and free of any clear error.

12

Getter." R&R at 25.  Getter objects to this recommendation, arguing that he has plausibly alleged that Herbst had possession of the money collected from Hi Bar's customers.  Def. Obj. at 19. Specifically, Getter argues that the allegation that Hi Bar was owed $26 million in receivables from customers at the time he was removed from the company, combined with the allegation that Herbst's son took over collection efforts on behalf of Hi Bar, "support[s] the plausible inference that efforts to collect the $26 million outstanding from Hi Bar's customers continued after" Getter departed and that Herbst is accordingly in possession of at least some percentage of the profits owed to Getter.  *Id.*

Even if the Court were to adopt Getter's inference that efforts to collect the $26 million outstanding from Hi Bar's customers continued after Hi Bar's business stopped operating, Getter would still fail to state a claim for unjust enrichment because he fails to allege that those collections exceeded Hi Bar's debts, expenses, and other liabilities and that any funds collected would thus constitute a profit that belonged in part to Getter.  Therefore, because Getter has not adequately alleged that Herbst received money belonging to Getter, these claims should be dismissed as Magistrate Judge Levy recommends.  *See, e.g.*, *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 330 (E.D.N.Y. 2005) (dismissing unjust enrichment claim because "[p]laintiffs have not alleged facts to suggest that JetBlue obtained any benefit that rightfully belonged to them"). The objection is overruled.

The R&R filed by Magistrate Judge Levy made other findings and reached other conclusions.  Prominent among them was his recommendation that Herbst's motion to dismiss Getter's breach of fiduciary duty claim be denied after noting that "[i]t is apparent . . . that Getter and Herbst were more than mere strangers dealing at arms-length." R&R at 20.  No party filed an objection to it.  As a result, the Court's review is for clear error rather than *de novo*.  The Court

13

has carefully reviewed Magistrate Judge Levy's report and recommendation on this claim and found it to be correct, well-reasoned, and free of any clear error. *See Dafeng*, 54 F. Supp. 3d at 283. The Court, therefore, adopts the denial of Herbst's motion to dismiss the fiduciary duty claim as the opinion of the Court.

II. <u>Getter's Counterclaims Against Hi Bar</u>

First on the list of Getter's objections to Magistrate Judge Levy's recommendations concerning his counterclaims against Hi Bar is his objection to the recommendation to dismiss his breach of contract counterclaim. Magistrate Judge Levy recommended dismissal because Getter could not plausibly allege that Hi Bar breached the agreement to pay him 50% of its net profits given his failure to plead the existence of net profits for Hi Bar to distribute. *See* R&R at 26. Getter misreads the R&R as recommending dismissal based on the lack of certain damages and argues that "[a]ny uncertainty regarding the precise amount of profits due" goes to damages, and not Getter's "right to seek damages in the first place." Def. Obj. at 21. Given that Getter has not pled the existence of net profits to distribute, and based on its *de novo* review, the Court agrees with Magistrate Judge Levy's recommendation that Getter has not alleged that Hi Bar breached its agreement to distribute 50% of net profits to him. Thus, Getter's objection to the recommendation is overruled, and his counterclaim against Hi Bar for breach of contract is dismissed.

The Court's ruling on the next objection is foreshadowed by the Court's resolution of Getter's claim for an accounting against Herbst. Like Getter's accounting claim against Herbst, Magistrate Judge Levy recommended dismissal of the accounting counterclaim against Hi Bar because "Getter has failed to allege that he entrusted money or property to Hi Bar which imposed on it the burden of accounting." R&R at 27. However, for the same reasons underlying the Court's prior ruling on Getter's claim for an accounting against Herbst, the Court holds that Getter has

14

stated an accounting counterclaim against Hi Bar. To that extent, Getter's objection is sustained, and the R&R is modified.

### III. The Derivative Claims

The R&R recommends dismissal of Getter's derivative claims against Herbst because Getter is not a member of Hi Bar and therefore lacks standing to bring these claims. *See* R&R 5–12. There has been no objection. In keeping with the clear error standard, the Court has carefully reviewed the report and recommendation on the derivative claims and found it to be correct, well-reasoned, and free of any clear error. *See Dafeng*, 54 F. Supp. 3d at 283. The Court, therefore, adopts Judge Levy's recommendation that the derivative claims be dismissed, in its entirety, as the opinion of the Court.

### IV. Leave to Amend

Where the court determines that a party could "allege additional facts that would support" its claims, leave to amend a complaint should be freely granted. *Gortat v. Capala Bros.*, 585 F. Supp. 2d 372, 377 (E.D.N.Y. 2008), *aff'd*, 568 F. App'x 78 (2d Cir. 2014); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). While Hi Bar argues that amendment would be futile, Getter explains that he "can allege additional facts demonstrating that Hi Bar has indeed collected money from some of Hi Bar's customers" following his departure from Hi Bar and that he "can make explicit" that "at the time Hi Bar discontinued operations its revenues far exceeded its expenses and debts." Def. Obj. at 19. These additional facts, if adequately pled, could alter the Court's calculus on the dismissal of Getter's unjust enrichment claim against Herbst and his breach of contract claim against Hi Bar. As such, Getter is granted leave to amend his Counterclaims and Third-Party Complaint as to those two claims.

Conclusion

For the foregoing reasons, Magistrate Judge Levy's R&R is adopted as modified by this Memorandum & Order. To that end, the Court sustains Getter's objections regarding his direct accounting claim against Herbst and his accounting counterclaim against Hi Bar. The remainder of his objections are overruled. The Court grants Herbst's motion to dismiss the derivative claims and the direct breach of contract, conversion, and money had and received claims with prejudice. The Court further grants Herbst's motion to dismiss the unjust enrichment claim and Hi Bar's motion to dismiss the breach of contract counterclaim without prejudice and grants Getter leave to amend his Counterclaims and Third-Party Complaint as to those two claims. Getter is directed to file any amended pleadings within 30 days of the date that this Memorandum & Order is docketed.

So Ordered.

Dated: Brooklyn, New York
October 12, 2025

/s/ Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge